[No. S065501. June 26, 2000.]

ROCHELLE C. LINDER, Plaintiff and Appellant, v.
THRIFTY OIL CO., Defendant and Respondent.

---

COUNSEL

Daar & Newman, Jeffery J. Daar and David Daar for Plaintiff and Appellant.

Chavez & Gertler, Mark A. Chavez; The Sturdevant Law Firm, James C. Sturdevant, Steven S. Kaufhold; Bruce A. Broillet; David S. Casey, Jr.; Deborah David; Douglas Devries; Laurence E. Drivon; Thor Emblem; Joseph F. Harbison III; Ian Herzog; Steven J. Keifield; Harvey R. Levine; Moses Lebovits; Wayne McClean; Mark P. Robinson, Jr.; David A. Rosen; Leonard Sacks; Daniel Smith; Chris Spagnoli; Robert B. Steinberg; Tony Tanke; Lea-Ann Tratten; Rick Simons; Thomas G. Stolpman; William D. Turley; and Roland Wrinkle for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Bird, Marella, Boxer, Wolpert & Matz, Ronald J. Nessim, Mark T. Drooks, Thomas R. Freeman and Thomas V. Reichert for Defendant and Respondent.

Thomas & Walton, John R. Walton; Daniel J. Popeo and Richard A. Samp for Washington Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for the Association for California Tort Reform as Amicus Curiae on behalf of Defendant and Respondent.

Riordan & McKinzie, Kenneth Klein, Gina M. Calvelli and Karen Meckstroth for Union Oil Company of California, doing business as Unocal, and California Retailers Association as Amici Curiae on behalf of Defendant and Respondent.

---

OPINION

BAXTER, J.—The trial court below denied certification of this case as a class action. The Court of Appeal affirmed. We granted review to consider several questions. First, may certification of a proposed class be denied based upon a trial court's preliminary assessment that the cause of action alleged on behalf of the class lacks sufficient merit? Second, was adequate consideration given to the possible benefits of class action in this case?

Third, did the Court of Appeal properly conclude that the aggregate amount of potential statutory penalties would be either too small or too onerous to support certification of a class?

We conclude that the answer to each of the foregoing questions is no. Accordingly, we reverse the judgment of the Court of Appeal with directions to remand the matter to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Rochelle C. Linder (Linder) filed this action on behalf of herself and all others "similarly situated." According to Linder, defendant Thrifty Oil Co. (Thrifty) violated two provisions of the Song-Beverly Credit Card Act of 1971 (Civ. Code,[1] § 1747 et seq.) (the Credit Card Act) and committed other unfair business practices. She seeks injunctive relief, money damages, statutory treble damages and civil penalties.

After Thrifty answered the second amended complaint, Linder moved to certify the case as a class action with two plaintiff classes. The first class, "the surcharge class," consists of more than 1,000,000 California residents who, by using credit cards between May of 1992 and May of 1995 to purchase gas at over 200 Thrifty service stations in California, were compelled to pay an allegedly illegal surcharge of roughly 4 cents per gallon more than customers paying in cash. (See § 1748.1.) The second class, "the penalty class," is comprised of numerous individuals who used their credit cards to make purchases at approximately 80 Thrifty service stations that allegedly violated the law by using credit card forms with a preprinted space for cardholders to fill in their telephone numbers. (See § 1747.8.)

The trial court denied Linder's certification motion in its entirety, but its stated reasons were limited to the proposed surcharge class. The Court of Appeal affirmed, additionally determining that the penalty class should not be certified because the aggregate amount of the potential penalties against Thrifty would be either too small to justify the burdens of class treatment or too onerous in relation to the alleged wrongdoing. We granted Linder's petition for review.

## DISCUSSION

█ Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. (See *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458 [115 Cal.Rptr. 797, 525

---

[1]Unless otherwise indicated, all further statutory references are to this code.

P.2d 701, 76 A.L.R.3d 1223] (*City of San Jose*); *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 703-704 [63 Cal.Rptr. 724, 433 P.2d 732].) " 'By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . .' " (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 469 [174 Cal.Rptr. 515, 629 P.2d 23].) Generally, a class suit is appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." (*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755] (*Blue Chip Stamps*); see *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964] (*Vasquez*).) But because group action also has the potential to create injustice, trial courts are required to " 'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.' " (*Blue Chip Stamps, supra,* 18 Cal.3d at p. 385, quoting *City of San Jose, supra,* 12 Cal.3d at p. 459.)

■ Section 382 of the Code of Civil Procedure authorizes class suits in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Vasquez, supra,* 4 Cal.3d at p. 809.) The community of interest requirement involves three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) Other relevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing. (See *Blue Chip Stamps, supra,* 18 Cal.3d at pp. 386-387.)

■ Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. The denial of certification to an entire class is an appealable order (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Daar v. Yellow Cab Co., supra,* 67 Cal.2d at pp. 698-699), but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made

[citation]" (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470). Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal " 'even though there may be substantial evidence to support the court's order.' " (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655 [22 Cal.Rptr.2d 419], quoting *Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 612 [236 Cal.Rptr. 605]; see *National Solar Equipment Owners' Assn. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1281 [1 Cal.Rptr.2d 325].) Accordingly, we must examine the trial court's reasons for denying class certification. "Any valid pertinent reason stated will be sufficient to uphold the order." (*Caro v. Procter & Gamble Co., supra,* 18 Cal.App.4th at p. 656.)

In this case, the trial court gave two reasons for its denial order. First, it observed that the statute prohibiting surcharges for credit card purchases contains a provision permitting discounts for cash purchases. (See § 1748.1, subd. (a).) Noting evidence that Thrifty service stations posted both their cash and credit card gas prices, the court concluded customers were free to choose the form of payment and therefore Linder could not establish a class community interest as a matter of law. Second, the court indicated that, even if members of the proposed class were to prevail on the surcharge claim, they would not receive a substantial benefit because their potential monetary recovery, if any, would be small. Based on the alleged 4 cents per gallon price differential between Thrifty's cash and credit prices, the court noted that a member who bought 20 gallons of gas would receive only 80 cents.[2]

A. *Merits of the Surcharge Cause of Action*

■ The Credit Card Act provides in relevant part: "No retailer in any sales . . . transaction with a consumer may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash . . . . A retailer may, however, offer discounts for the purpose of inducing payment by cash . . . or other means not involving the use of a credit card, *provided that the discount is offered to all prospective buyers.*" (§ 1748.1, subd. (a), italics added.) As the Court of Appeal observed below, there are no cases interpreting this provision. It is Linder's position, based upon the italicized language, that Thrifty has violated the Credit Card Act by failing to offer its cash discount at all of its gas stations. Conversely, Thrifty argues that each retail station must be viewed separately and that, so long as the cash discount is openly displayed and offered to all prospective buyers at the

_____

[2]As Linder points out, the amount of damages for each member of the putative surcharge class varies depending upon the number of gallons of gas purchased with credit cards during the three years at issue. Those who were repeat customers may have been damaged far in excess of the 80 cents estimated.

stations where it is available, it is immaterial that other stations offer no discount at all. Presented with these two opposing viewpoints, the trial court evidently rejected Linder's construction of the statute and denied certification in part on that basis. The Court of Appeal affirmed, finding that section 1748.1 "suggests that, as a matter of law, Linder cannot prevail on her surcharge claim."[3]

As indicated, certification may not be denied based upon improper criteria. (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Caro v. Procter & Gamble Co., supra,* 18 Cal.App.4th at p. 655; cf. *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750].) Here, Linder contends both lower courts erroneously considered and prejudged the legal merits of the surcharge cause of action. She argues that where, as here, a cause of action presents a legal question of first impression, its sufficiency is appropriately addressed only at trial, or through a pleading such as a demurrer,[4] or on a dispositive pretrial motion for judgment on the pleadings, summary judgment or summary adjudication.

Code of Civil Procedure section 382 is silent regarding the necessity or propriety of an inquiry into the legal merits of class claims during the certification process. While our opinions have identified various factors that are important to the certification decision, they have not addressed this particular subject directly.

The Consumer Legal Remedies Act (§ 1750 et seq.) (CLRA) and rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (Rule 23) also authorize class actions, although neither is applicable here. In the past, however, we have looked to the procedures governing class actions under the CLRA and Rule 23 for guidance on novel certification issues. (*Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 376 & fn. 7 [149 Cal.Rptr. 360, 584 P.2d 497]; see *Vasquez, supra,* 4 Cal.3d at pp. 820-821.) We shall take another look today.

The CLRA, which protects against unfair and deceptive business practices, provides that any consumer who suffers damage as a result of a proscribed practice may bring an action on behalf of himself or herself and

---

[3]The Court of Appeal purported to express no view on Linder's ability to pursue this case individually, explaining that its conclusions applied only to Linder's "desire to pursue the case as a class action, *which makes the probability of success a relevant factor.*" (Italics added.)

[4]The absence of any allegation essential to a cause of action renders it vulnerable to a general demurrer. A ruling on a general demurrer is thus a method of deciding the merits of the cause of action on assumed facts without a trial. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 905, p. 366.)

other similarly situated consumers to recover damages or obtain other relief authorized by the act. (§§ 1760, 1770, 1780, 1781, subd. (a).) In contrast to Code of Civil Procedure section 382, the CLRA sets forth specific procedures regarding prerequisites to filing suit, permissible motions and notice to class members. (Civ. Code, §§ 1781, 1782.)

As relevant to this case, the CLRA provides: "The court *shall* permit the suit to be maintained on behalf of all members of the represented class *if all of the following conditions exist*: [¶] (1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class." (§ 1781, subd. (b), italics added.) Nowhere does the CLRA purport to require a showing of potential success on the merits of the suit before certification may be ordered.[5] Although trial courts are authorized, upon a properly noticed motion, to determine that "[t]he action is without merit or there is no defense" thereto (§ 1781, subd. (c)(3)), that procedure appears independent of the procedure for certification (see § 1781, subd. (c)(1); but see *Anthony v. General Motors Corp.* (1973) 33 Cal.App.3d 699, 707 [109 Cal.Rptr. 254] [indicating to the contrary in an action not subject to the CLRA]).

The procedures governing federal class actions under Rule 23 do not permit inquiries into the merits of class claims for relief. As relevant here, Rule 23 provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." (Rule 23(c)(1).) In *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156 [94 S.Ct. 2140, 40 L.Ed.2d 732] (*Eisen*), the United States Supreme Court explained that "nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." (*Eisen*,

[5]Section 1781, subdivision (b)'s silence on the topic distinguishes it from other statutes that require plaintiffs to establish a minimum level of legal sufficiency and triability of certain discrete claims as a condition of their assertion. (See, e.g., Civ. Code, §§ 1714.10, subd. (a) [plaintiff must show "reasonable probability" of prevailing on civil conspiracy claim against attorney], 3295, subd. (c) [plaintiff must show "substantial probability" of success on punitive damages claim before discovering financial information]; Code Civ. Proc., §§ 425.13, subd. (a) [barring inclusion of a punitive damages claim in certain actions against health care providers unless plaintiff first demonstrates a "substantial probability" of prevailing on the claim], 425.16, subd. (b) [plaintiff must show "probability" of success on "SLAPP" suit].)

*supra*, 417 U.S. at p. 177 [94 S.Ct. at p. 2152].) Starting from that premise, the court determined that Rule 23 does not authorize a court to conduct a preliminary hearing on the merits of a suit in order to shift the cost of notice to absent class members from the plaintiff to the defendant.

Although *Eisen* focused on notice costs, the high court expressed its agreement with *Miller v. Mackey International, Inc.* (5th Cir. 1971) 452 F.2d 424 (*Miller*), a case specifically holding that a trial court could not consider the substantive merits of a claim for relief when passing on a motion for a class action. In *Miller*, the Fifth Circuit United States Court of Appeals emphasized that the propriety of a class action is "basically a procedural question" and that "[a] suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." (452 F.2d at p. 427.) The circuit court explained: "Rule 23 delineates the scope of inquiry to be exercised by a district judge in passing on a class action motion. Nothing in that Rule indicates the necessity or the propriety of an inquiry into the merits. Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. Failure to state a cause of action is entirely distinct from failure to state a class action." (452 F.2d at p. 428.) Agreeing with *Miller*, the United States Supreme Court concluded in *Eisen*: " 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " (*Eisen, supra*, 417 U.S. at p. 178 [94 S.Ct. at p. 2153], quoting *Miller, supra*, 452 F.2d at p. 427.) Subsequent federal decisions have interpreted *Eisen*'s broad language as barring merit-based inquiries in the class certification process.[6]

Like the foregoing authorities, we view the question of certification as essentially a procedural one that does not ask whether an action is legally or

[6](See, e.g., *Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F.3d 1227, 1232; *Hudson v. Delta Air Lines, Inc.* (11th Cir. 1996) 90 F.3d 451, 457; *Adamson v. Bowen* (10th Cir. 1988) 855 F.2d 668, 676; *McCarthy v. Kleindienst* (D.C. Cir. 1984) 741 F.2d 1406, 1413-1414, fn. 8 [239 App.D.C. 247] [applying *Eisen*'s bar to assessments of defenses]; *Redditt v. Mississippi Extended Care Centers, Inc.* (5th Cir. 1983) 718 F.2d 1381, 1388; *Sirota v. Solitron Devices, Inc.* (2d Cir. 1982) 673 F.2d 566, 570-572; *Eggleston v. Chicago Journeymen Plumbers, etc.* (7th Cir. 1981) 657 F.2d 890, 895; *Finberg v. Sullivan* (3d Cir. 1980) 634 F.2d 50, 64; *Doctor v. Seaboard Coast Line R. Co.* (4th Cir. 1976) 540 F.2d 699, 707-708; *Weathers v. Peters Realty Corporation* (6th Cir. 1974) 499 F.2d 1197, 1201; see *Lamphere v. Brown University* (1st Cir. 1977) 553 F.2d 714, 718-719, fn. 11.)

Some California Courts of Appeal have relied upon *Eisen* in generally stating that the merits of a lawsuit may not be considered on a class certification motion. (E.g., *Stephens v. Montgomery Ward* (1987) 193 Cal.App.3d 411, 418 [238 Cal.Rptr. 602]; see *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1271-1272 [242 Cal.Rptr. 339] [citing *Stephens v. Montgomery Ward*].)

factually meritorious. Nonetheless, we remain mindful that if the class action is to prove a useful tool to the litigants and the court, trial courts must be accorded the flexibility "to adopt innovative procedures, which will be fair to the litigants and expedient in serving the judicial process." (*Vasquez, supra,* 4 Cal.3d at p. 821; see *Green v. Obledo* (1981) 29 Cal.3d 126, 148 [172 Cal.Rptr. 206, 624 P.2d 256].) Here, Thrifty argues that a court's decision whether to certify a class—and thus put into motion all of the administrative and management effort and expense of certification—should be informed by an evaluation of the merits of the proposed class claims. Thrifty contends that, given the substantial burdens of class litigation, a trial court should have authority to deny certification if it finds that, viewing all evidentiary presumptions and disputed facts in the plaintiff's favor, the plaintiff's substantive theories and claims lack sufficient merit.

We agree that the important interests of fairness and efficiency sometimes may be served better when class causes of action are screened for legal sufficiency before the matter of certification is decided. But nothing prevents a court from weeding out legally meritless suits prior to certification via a defendant's demurrer or pretrial motion. In fact, it is settled that courts are authorized to do so. (See *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 263-265 [178 Cal.Rptr. 612, 636 P.2d 575]; *Civil Service Employees Ins. Co. v. Superior Court, supra,* 22 Cal.3d at pp. 373-374; cf. § 1781, subd. (c)(3).)[7]

When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards. Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural protections would be

---

[7]At oral argument in this matter, Thrifty contended that *Blue Chip Stamps, supra,* 18 Cal.3d 381, prohibited trial courts from ruling on defense motions for summary judgment or summary adjudication prior to a determination on the certification question. Thrifty is wrong. *Blue Chip Stamps* merely noted that, subsequent to the trial court's rulings in that case, *Home Sav. & Loan Assn. v. Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal.Rptr. 511] held that procedural class action issues must be adjudicated prior to a determination on a motion for partial summary judgment. (*Blue Chip Stamps, supra,* 18 Cal.3d at p. 385, fn. 3.) Subsequent to *Blue Chip Stamps,* this court recognized that a defendant may seek an early merit determination prior to a certification decision, and that there are legitimate reasons why a defendant might be motivated to do so, such as the desire " 'to avoid discovery or other litigation expenses entailed in notification which may be eliminated if the plaintiff's claim is rejected on the merits at an early stage of the proceeding.' " (*Employment Development Dept. v. Superior Court, supra,* 30 Cal.3d at p. 264, quoting *Civil Service Employees Ins. Co. v. Superior Court, supra,* 22 Cal.3d at pp. 373-374.)

necessary to ensure that an otherwise certifiable class is not unfairly denied the opportunity to proceed on legitimate claims. Substantial discovery also may be required if plaintiffs are expected to make meaningful presentations on the merits. All of that is likely to render the certification process more protracted and cumbersome, even if, as Thrifty suggests, trial courts were prohibited from resolving factual disputes.[8] Such complications hardly seem necessary when procedures already exist for early merit challenges.

Thrifty argues a trial court should have flexibility to consider the likely invalidity of the plaintiff's causes of action because of the substantial economic and administrative burdens that approval of class certification would entail. Thrifty also emphasizes that the denial of certification, unlike the granting of dispositive pretrial motions, does not terminate the substantive right of any party or prospective party to pursue an individual claim.

We are not persuaded by Thrifty's suggestion that the traditional criteria and factors for assessing the propriety of certification are inadequate to screen out nonbeneficial class actions. As *Miller* indicated in the context of Rule 23, the traditional requirements are difficult to meet and represent meaningful obstacles to inappropriate class suits. (*Miller, supra*, 452 F.2d at p. 429.)

Thrifty's other point also fails to persuade. While the mere denial of certification does not, as a legal matter, terminate the right of any plaintiff to pursue claims on an individual basis, it is likely to have that net effect when there has been injury of insufficient size to warrant individual action. But even assuming the denial of certification does not end an action, Thrifty's proposal virtually assures that courts would be asked to decide repetitious challenges regarding the legal sufficiency of an action, e.g., at the pleading stage through a demurrer, at the certification stage, and yet again with regard to the plaintiff's individual action. Judicial economy and efficiency would not be served under such an approach.

Thrifty next relies upon *Matter of Rhone-Poulenc Rorer Inc.* (7th Cir. 1995) 51 F.3d 1293 (*Rhone-Poulenc*), certiorari denied (1995) 516 U.S. 867

---

[8]The federal Judicial Conference Advisory Committee on Civil Rules (the Committee), which is charged with studying and proposing revisions to Rule 23, apparently reached similar conclusions. In 1996, that learned body considered one or more proposed amendments that would have diminished the vitality of *Eisen, supra*, 417 U.S. 156, by permitting preliminary assessments of the merits at the certification stage. (*Markham v. White* (N.D.Ill. 1997) 171 F.R.D. 217, 221, fn. 4.) As of this date, the Committee has declined to adopt any of the proposals, evidently out of concern that preliminary merit assessments might have to be supported by extensive discovery, thus protracting the certification determination and adding great expense, and concern that a court's prediction of the merits may affect all future proceedings in the case and may have real-world consequences as well. (See McGuire, *The Death Knell for Eisen: Why the Class Action Analysis Should Include an Assessment of the Merits* (1996) 168 F.R.D. 366, 400-401.)

[116 S.Ct. 184, 133 L.Ed.2d 122], and *Castano v. American Tobacco Co.* (5th Cir. 1996) 84 F.3d 734 (*Castano*) to argue that certification of untested legal claims creates insurmountable pressure on the defendants to settle, even when the probability of an adverse judgment on the merits is low. For that reason, Thrifty contends, the novelty of a claim for relief should weigh heavily against certification and the trial court's order denying certification of the surcharge cause of action should be upheld.

*Rhone-Poulenc* and *Castano* involved claims for relief that were very different from those presented here. In those cases, putative class members sought substantial damages for personal injuries allegedly resulting from the defendants' commission of massive, nationwide torts. (*Rhone-Poulenc, supra,* 51 F.3d 1293 [negligence pertaining to hemophiliacs infected by the AIDS virus]; *Castano, supra,* 84 F.3d 734 [tobacco companies sued for fraud, negligent misrepresentation, infliction of emotional distress, breach of warranty, strict products liability].) In the portions of the decisions cited by Thrifty, the appellate courts were troubled that the aggregation of individual claims threatened ruinous liability for the defendants on the potential vagaries of one jury. (*Rhone-Poulenc, supra,* 51 F.3d at p. 1298 [$25 billion or more in potential liability]; *Castano, supra,* 84 F.3d at p. 746 ["[t]he risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low"].) And because the actions required application of the laws of all 50 states, the courts also were concerned that state law variances might swamp any common issues. (*Castano, supra,* 84 F.3d at pp. 741-744; see *Rhone-Poulenc, supra,* 51 F.3d at pp. 1300-1302.) In stark contrast, while Linder's surcharge claim may be novel, it turns on the interpretation of a single California statute and does not involve potentially ruinous liability. Indeed, the argument here is that any class recovery would be minimal. In short, the concerns aired in *Rhone-Poulenc* and *Castano* are not implicated here.

Finally, Thrifty argues we should follow the lead of several Courts of Appeal that found certification inappropriate after assessing the merits of the class claims. (*American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291 [44 Cal.Rptr.2d 526] [plaintiffs could not maintain class action for breach of implied warranty of merchantability where no personal injury or property damage was alleged and evidence showed that the vast majority of the products remained fit for their ordinary purpose]; *Kaye v. Mount La Jolla Homeowners Assn.* (1988) 204 Cal.App.3d 1476 [252 Cal.Rptr. 67] [plaintiffs could not possibly prevail against a proposed defendant class on their theory of vicarious liability]; *Collins v. Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62 [231 Cal.Rptr. 638] [class members unable to prove loss or harm resulting from purchase of the defendant's eggs].)

For the reasons previously expressed, we are not convinced that certification should be conditioned upon a showing that class claims for relief are likely to prevail. Thrifty does not argue that demurrers or early dispositive motions in those cases could not effectively have accomplished the same results. Nonetheless, in keeping with the principle that trial courts should be afforded flexibility in dealing with class actions (*Vasquez, supra,* 4 Cal.3d at p. 821; see *Green v. Obledo, supra,* 29 Cal.3d at p. 148), we do not foreclose the possibility that, in the exceptional case where the defense has no other reasonable pretrial means to challenge the merits of a claim to be asserted by a proposed class, the trial court may, after giving the parties notice and an opportunity to brief the merits question, refuse class certification because the claim lacks merit as a matter of law. Furthermore, we see nothing to prevent a court from considering the legal sufficiency of claims when ruling on certification where both sides jointly request such action.

Nothing we say today is intended to preclude a court from scrutinizing a proposed class cause of action to determine whether, assuming its merit, it is suitable for resolution on a classwide basis. Indeed, issues affecting the merits of a case may be enmeshed with class action requirements, such as whether substantially similar questions are common to the class and predominate over individual questions or whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses. (See *Caro v. Procter & Gamble Co., supra,* 18 Cal.App.4th at p. 656; see also *Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469, fn. 12 [98 S.Ct. 2454, 2458, 57 L.Ed.2d 351].) Moreover, although we recognize that defendants may mount precertification challenges on the merits, we do not suggest they necessarily are entitled to a merit determination before a ruling on certification. As before, trial courts retain broad discretion to conduct the proceedings in an orderly and just manner.

In closing, we observe our holding is consistent with the weight of authority in other jurisdictions. Not only does federal law generally bar preliminary merit assessments for certification purposes, but a significant number of our sister states impose similar restrictions. (E.g., *Black Hawk Oil Co. v. Exxon Corp.* (1998) 1998 Okla. 70 [969 P.2d 337, 343]; *Tilley v. Pacesetter Corp.* (1998) 333 S.C. 33 [508 S.E.2d 16, 21]; *Direct Ins. Company v. Lane* (1997) 328 Ark. 476 [944 S.W.2d 528, 531-532]; *Vignaroli v. Blue Cross of Iowa* (Iowa 1985) 360 N.W.2d 741, 745; *Ojalvo v. Bd. of Trustees of Ohio State* (1984) 12 Ohio St.3d 230 [466 N.E.2d 875, 877-878]; *Wash. Ed. Ass'n v. Shelton School Dist. No. 309* (1980) 93 Wn.2d 783 [613 P.2d 769, 773]; *Texas Commerce Bank Nat. Ass'n v. Wood* (Tex.Ct.App. 1999) 994 S.W.2d 796, 802.) Several other states have court rules that allow separate merit determinations prior to certification, but not the sort of

preliminary merit screening advocated by Thrifty. (E.g., Mich. Court Rules, rule 3.501(D)(3) [decision on a motion for judgment or partial judgment may precede decision on certification]; Or. Rules Civ. Proc., rule 32, subsec. C(2) [class certification decisions may be postponed until after determination of the validity or applicability of a challenged statute, law, administrative interpretation or regulation].)

### B. *Benefits of Certification*

■ The trial court denied class certification for the additional reason that class members would not receive any substantial benefit. While the court did not address potential recoveries of penalty class members, it did conclude that the individual damages of surcharge class members, if any, "would be small, perhaps not enough to support the required mailings to and from the class." The Court of Appeal agreed, finding that the surcharge claim, even if legally correct, would not confer substantial benefits because the burden of identifying class members and providing notice would be too high in relation to the small amount of each member's potential recovery. In reaching its conclusion, the appellate court assumed the surcharge class would require individual notice by first class mail.

The issue of the appropriate form of notice to class members was not before the trial court when it ruled on certification. Hence, that court has yet to determine whether individual notice by mail, or notice by publication, or some other type of notice, is proper in this case. Because the record remains factually undeveloped regarding the necessity, feasibility and costs of any particular form of notice, we decline the parties' invitation to speculate whether or not notice by first class mail may be constitutionally required.[9]

Viewed in context, the trial court's reference to "the required mailings to and from the class" simply alluded to mailings that inevitably would occur in the event proofs of claims and checks for damage awards were sent. The

---

[9]Thrifty contends that *Eisen, supra,* 417 U.S. 156, and *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797 [105 S.Ct. 2965, 86 L.Ed.2d 628] support the Court of Appeal's conclusion that the putative class members here are readily identifiable and therefore must be given notice by first class mail in order to satisfy constitutional due process concerns. Conversely, Linder relies on California authorities to argue that notice by publication may be constitutionally permissible whether or not the names and addresses of class members are readily ascertained. (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 861 [126 Cal.Rptr. 811, 544 P.2d 947], citing *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960 [124 Cal.Rptr. 376] [representative plaintiffs "need only provide meaningful notice in a form that 'should have a reasonable chance of reaching a substantial percentage of the class members' "]; see also § 1781, subd. (d) [notice by publication may be ordered "if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally"].)

court's point was that, even if members of the proposed class were to prevail on the surcharge claim, they would not receive a substantial benefit because their potential monetary recovery would be small. We now turn to the question before us: Was adequate consideration given to the possible benefits of class action in this case?

In concluding that no substantial benefit would result from certification, both the trial court and the Court of Appeal focused narrowly on each putative class member's potential recovery under the surcharge claim. Setting aside the fact that class members who were repeat customers might be entitled to recover far more than the minimal 80-cent damage figure noted by the trial court, it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce "several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims." (*Vasquez, supra,* 4 Cal.3d at p. 808.)

In *Blue Chip Stamps, supra,* 18 Cal.3d 381, we held that a trial court abused its discretion in ordering certification of a class comprised of persons who sought recovery of excess tax reimbursements that they paid to the defendant trading stamp company while redeeming stamps for merchandise. In finding that no substantial benefit would result from certification, we found several circumstances relevant. First, the potential recovery of each class member was minimal (some as little as 18 cents), thus making it doubtful that members would come forward ultimately to prove their individual claims. (See *id.* at pp. 384-386.) Second, the defendant had ended its allegedly wrongful practice long before the action was filed, which rendered the request for injunctive relief "a rather empty prayer." (*Id.* at p. 386.) Third, the defendant had not retained the disputed reimbursement payments but instead paid them over to the public treasury. (*Id.* at p. 387.) Fourth, the plaintiffs' proposed form of fluid recovery, i.e., repayment of excess tax collections by reducing future charges, would not have compensated class members in a rational fashion and was problematic given the great decline of the stamp business; hence, leaving the overpayments in the public treasury seemed a fair solution. (*Id.* at pp. 386-387.)

Although the majority in *Blue Chip Stamps* placed utmost significance on the small amount of potential individual recovery (18 Cal.3d at pp. 385-386), Justice Tobriner's separate opinion effectively clarified that trial courts remain under the obligation to consider "the role of the class action in

deterring and redressing wrongdoing." (18 Cal.3d at p. 387 (conc. opn. of Tobriner, J.).) Invoking settled principles, Justice Tobriner emphasized: "A company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation. (See *Vasquez* v. *Superior Court*[, *supra*,] 4 Cal.3d 800, 808 . . . ; *Daar* v. *Yellow Cab Co.*[, *supra*,] 67 Cal.2d 695, 715 . . . .) The problems which arise in the management of a class action involving numerous small claims do not justify a judicial policy that would permit the defendant to retain the benefits of its wrongful conduct and to continue that conduct with impunity. (See *Daar* v. *Yellow Cab Co., supra*, 67 Cal.2d at p. 715; *Cartt* v. *Superior Court*[, *supra*,] 50 Cal.App.3d 960, 971.)" (*Ibid.*) Thus, the facts before the court in *Blue Chip Stamps* did not support certification because group action would neither serve to deter wrongdoing nor result in any added compensation for class members. (*Id.* at p. 389 (conc. opn. of Tobriner, J.); see also *Caro* v. *Procter & Gamble Co., supra*, 18 Cal.App.4th at p. 660.)

The views expressed by Justice Tobriner were entirely consistent with the holding and recognition of the majority that class actions are appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer. [Citations.]" (*Blue Chip Stamps, supra*, 18 Cal.3d at pp. 385-386.) Indeed, since *Blue Chip Stamps* was decided, we have affirmed the principle that defendants should not profit from their wrongdoing "simply because their conduct harmed large numbers of people in small amounts instead of small numbers of people in large amounts." (*State of California* v. *Levi Strauss & Co.* (1986) 41 Cal.3d 460, 472 [224 Cal.Rptr. 605, 715 P.2d 564] [discussing fluid recovery in class actions].)

The benefits and burdens of a proposed class action must be evaluated under correct legal standards. While the potential amount of each individual recovery is a significant factor in weighing the benefits of a class action, it is not the only factor requiring consideration. By incorrectly limiting the scope of the relevant inquiry, the lower courts here did not evaluate whether the proposed class suit is the only effective way to halt and redress the alleged wrongdoing, or to prevent unjust advantage to Thrifty. Moreover, the Court of Appeal assumed that substantial time and expense would be required to provide legally adequate notice to class members, even though the trial court had yet to take evidence and rule on the matter. Accordingly, without intimating any view on the matter, we find it appropriate to leave this issue to the trial court for reexamination.

C. *The Penalty Class*

■ Linder's penalty class claim alleges that Thrifty violated the Credit Card Act by using credit card forms with a preprinted space for cardholders

to fill in their telephone numbers. (See § 1747.8.) The trial court denied Linder's motion for certification in its entirety, but its minute order addressed only the proposed surcharge class.

In the Court of Appeal, Thrifty repeated the same arguments it made to the trial court to support denial of the penalty class certification. First, Thrifty contended Linder could not allege or show that Thrifty refused to complete credit card transactions without the personal information, that it used the information for any purpose or benefit, or that its use of unlawful forms damaged class members. Second, Thrifty asserted the evidence would exonerate it from any liability pursuant to section 1747.8, subdivision (e), which provides that "no civil penalty shall be assessed for a violation of this section if the defendant shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error made notwithstanding the defendant's maintenance of procedures reasonably adopted to avoid such an error." Finally, Thrifty argued the penalty class was not suited to class treatment because Thrifty would face economic annihilation through the aggregation of statutory penalties. The Court of Appeal agreed certification was improper, finding that the aggregate amount of the potential penalties would be either too small to support the burdens of class certification or too onerous in relation to the alleged wrongdoing.

To the extent Thrifty's first and second contentions challenged the sufficiency of the penalty claim and argued the merits of an anticipated defense, they were not proper considerations on a motion for certification. Accordingly, the lower courts acted appropriately to the extent they implicitly rejected such contentions. We now turn to the concern over aggregate penalty amounts.

Section 1747.8, subdivision (e) provides in relevant part that violators of the statute "shall be subject to a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation, to be assessed and collected in a civil action brought by the person paying with a credit card . . . ."

In assessing Thrifty's potential liability, the Court of Appeal viewed the statutory penalties as calling for either (1) a total penalty of $1,250 for the entire class (by regarding Linder as one violation and the class as a whole as a second violation), which would not justify the cost and effort of class treatment, or (2) one $250 penalty for Linder and additional penalties of $1,000 for each other member of the class, which "could very well bankrupt Thrifty by the imposition of penalties far exceeding anything the Legislature could have had in mind" when it enacted the statute. The court then

expressed its agreement with *Ratner v. Chemical Bank New York Trust Company* (S.D.N.Y. 1972) 54 F.R.D. 412 (*Ratner*), which held that a class action is not the superior method for adjudicating a controversy where, among other things, statutory damages would be wholly out of proportion to the alleged wrongdoing.

The foregoing analysis is flawed. First, the Court of Appeal plainly erred in concluding that only two violations of section 1747.8 could be found if Thrifty is shown to have presented unlawful forms to thousands of cardholders. Second, section 1747.8 does not mandate fixed penalties; rather, it sets *maximum* penalties of $250 for the first violation and $1,000 for each subsequent violation. (§ 1747.8, subd. (e).) Accordingly, the situation here is vastly different from that in *Ratner, supra*, 54 F.R.D. 412, where the statute at issue provided for *minimum* damages of $100 and thus implicated *minimum* class damages in the neighborhood of $13 million. (See 54 F.R.D. at pp. 414, 416.)[10]

In sum, the Court of Appeal's analysis was premised upon a false dilemma. Contrary to the court's assumption, there is an entire range of penalties available between what was perceived as the too small amount of $1,250 for the entire class and the too onerous amount of $1,000 for each class member. Since the dilemma contemplated on appeal does not actually exist, it constitutes an insufficient basis for upholding the denial of certification.

### DISPOSITION

An order denying certification may not stand when it is based upon improper criteria and incorrect legal assumptions. Here, the lower courts improperly considered and prejudged the legal merit of the surcharge cause of action, and, even after assuming it was meritorious, made erroneous legal assumptions in weighing the potential benefits and burdens. Additionally, the Court of Appeal relied upon an incorrect reading of section 1747.8, subdivision (e), in finding the penalty class was properly denied certification. We therefore reverse the judgment of the Court of Appeal.

We are not, however, prepared to say that class treatment necessarily is proper. Although the trial court may conclude that certification is appropriate after eliminating the improper criteria and erroneous assumptions from

---

[10]After the decision in *Ratner*, Congress amended the statutory scheme by expressly authorizing class actions and limiting the permissible aggregate recovery in a class action to the lesser of $100,000 or 1 percent of the net worth of the class action defendant found in violation of the act. (See generally *Agostine v. Sidcon Corp.* (E.D.Pa. 1975) 69 F.R.D. 437, 443-444.) The statutory limitation currently provides that the aggregate recovery of statutory damages in any class action or series of class actions arising out of the same failure to comply shall not exceed the lesser of $500,000 or 1 percent of the class action defendant's net worth. (15 U.S.C. § 1640(a)(2)(B).)

consideration, upon a fresh look it may discern valid reasons for denying Linder's certification motion. Accordingly, we find it appropriate to remand the matter to the Court of Appeal, with directions that it remand to the trial court for further proceedings consistent with this opinion. (See, e.g., *Miller, supra*, 452 F.2d at p. 431; see also *General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 160-161 [102 S.Ct. 2364, 2372-2373, 72 L.Ed.2d 740].)

George, C. J., Mosk, J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.

On August 9, 2000, the opinion was modified to read as printed above.