Filed 3/15/22  Oroville Dam Cases CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| OROVILLE DAM CASES | C090941 |
| | (Super. Ct. No. JCCP4974) |

Oroville Dam was completed in 1968 as part of the State Water Project and is maintained by respondent Department of Water Resources (DWR).  The dam is located on the Feather River, east of the City of Oroville.  In the winter of 2016-2017, the area experienced record rainfall.  Dam operators released water through a main spillway, but the main spillway became damaged, and the emergency spillway was engaged.  This action arises out of evacuations based on concerns that the emergency spillway would fail.  Plaintiffs Francis Bechtel, Jacob Klein, Chantel Ramirez, and Denise Johnson (collectively Plaintiffs or Bechtel Plaintiffs) appeal from an order denying their motion to certify a class of individuals "who evacuated their residence on February 12, 2017[,] pursuant to a mandatory evacuation order resulting from the hazardous situation at the Oroville Dam."  The trial court concluded that Plaintiffs failed to meet their burden of

1

establishing that the proposed class was ascertainable because the evacuation orders did not mandate evacuation of a specific geographic area. The trial court's conclusion was not an abuse of discretion. Therefore, we will affirm the order.

## I. BACKGROUND

We begin with an initial overview of the procedural history that led to this appeal. Plaintiffs filed their operative complaint "on behalf of the approximately 188,000 residents of Oroville, Marysville, Yuba City, and other areas near the Feather River who were ordered to evacuate their homes on February 12, 2017[,] in response to the failing 'emergency spillway' at the Oroville Dam." Specifically, the complaint indicated Plaintiffs sought to represent a class of "[a]ll persons evacuated on or about February 12, 2017[,] as a result of the failure of the Oroville Dam spillway." The complaint alleges three causes of action against DWR: (1) private nuisance, (2) public nuisance, and (3) dangerous condition of public property.

This action and others were coordinated under Judicial Council order (Code Civ. Proc., § 404.3; Cal. Rules of Court, rule 3.540) in the Sacramento County Superior Court as the Oroville Dam Cases (JCCP No. 4974) and assigned to the Honorable James E. McFetridge as coordination trial judge.

Plaintiffs filed a motion for class certification that sought to certify a class of: "[a]ll persons who evacuated their residence on February 12, 2017[,] pursuant to a mandatory evacuation order resulting from the hazardous situation at the Oroville Dam." Meanwhile, a different set of plaintiffs (the Giordano Plaintiffs) who alleged similar causes of action sought to certify three different classes.[1]

---

[1] 1. Diminution Class: "All persons who owned real property downstream of the Oroville Dam on February 12, 2017[,] whose real property values were diminished as a result of the Oroville Dam Crisis and/or the unsafe condition of the Oroville Dam."

2

The trial court denied both motions in a 90-page ruling. The Giordano Plaintiffs did not appeal. Thus, we summarize the court's ruling only as it pertains to the Bechtel Plaintiffs. As to them, the trial court found the proposed class was not sufficiently ascertainable. Additionally, the court found the Bechtel Plaintiffs did not meet their burden of proving that common questions of law or fact predominated. The court found many of the issues that precluded a finding of ascertainability impacted its analysis of whether common questions predominated over individual ones and led to the conclusion they did not: "There is simply no means by which to readily determine whether a residence or person falls within a 'mandatory' evacuation zone, whether the resident actually evacuated, and which order (if any) caused that person to evacuate." Further, evaluation of each class member's purported damages would demand an individualized inquiry. As to whether the proposed class representatives had claims typical of the class, the court explained, "because there simply is no typical claim among this group, the Court cannot say that the proposed Plaintiffs have claims that are typical of the class members." The court also found that even if it could somehow conclude the class was ascertainable and common issues predominated, the case was not manageable as a class action.

Bechtel Plaintiffs filed a timely appeal.

---

2. Property Loss Class: "All persons who suffered damage to real or personal property with that damage valued at $100,000 or less as a result of the Oroville Dam Crisis due to flooding, seepage, high water, excessive flows and abrupt and erratic releases of high volumes of water from the Oroville Dam."

3. Business Loss Class: "All persons or businesses who sustained business losses as [a] result of the Oroville Dam Crisis and/or the unsafe condition of the Oroville Dam."

## II. DISCUSSION

### A.     Class Certification Principles

"Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.'  To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members.  [Citations.]  The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 435.)  A proponent of class certification must also demonstrate the manageability of individual issues.  (*Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th 906, 922; see also *Duran v. U.S. Bank National Assn*. (2014) 59 Cal.4th 1, 29 ["[T]he court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently"].)

### B.     Standard of Review

"In reviewing a class certification order, our inquiry is 'narrowly circumscribed.' [Citation.]  ' "The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.'  [Citation.]  A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions." ' " (*Noel v. Thrifty Payless, Inc*. (2019) 7 Cal.5th 955, 967-968 (*Noel*).)

4

Additionally, " 'we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial.' [Citation.] However, ' "[a]ny valid pertinent reason stated will be sufficient to uphold the order." ' [Citations.] [¶] Under these principles, if a trial court bases its denial of class certification on an incorrect legal analysis, a reviewing court must reverse and remand, unless the trial court independently relied on at least one other legally valid and factually supported ground." (*Ramirez v. Balboa Thrift & Loan* (2013) 215 Cal.App.4th 765, 776-777.)

C.    *Ascertainability*

Plaintiffs' opening brief challenges various aspects of the trial court's ruling and does not address ascertainability of their proposed class until after discussing the community of interest requirement, including the subfactors of predominance and typicality. We, however, will begin with the question of ascertainability because it is pivotal and ultimately dispositive. As previously stated, in examining predominance, the court explained the class was "plagued" by the same issues that precluded a finding of ascertainability. Additionally, the court found the lack of a typical claim prevented it from concluding the class representatives had claims that were typical of class members. The manageability of this proposed class is also intertwined with the question of whether the class is ascertainable. (*Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 849.) Moreover, if the trial court did not err in concluding Plaintiffs failed to establish an ascertainable class, we need not address the other conclusions the court reached. (See *Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 923 ["the court's ruling may be upheld based solely on the court's finding that [plaintiff] failed to propose an ascertainable class"].) We thus turn to this pivotal question, pausing first to provide further background pertaining to the narrowed focus of our opinion.

5

## 1. *Trial Court Briefing*

In support of their motion to certify a class of "[a]ll persons who evacuated their residence on February 12, 2017[,] pursuant to a mandatory evacuation order resulting from the hazardous situation at the Oroville Dam," Plaintiffs submitted evidence that a mandatory order was issued at 4:10 p.m. that day, and the decision to issue the order was made by the Butte County Sheriff. Plaintiffs stated the Sheriff "ordered evacuation of the low levels of Oroville and areas downstream." Additionally, Plaintiffs' evidence indicated this order was reduced to a warning on February 14, 2017.

Plaintiff Johnson rents a home in Oroville. In her declaration in support of Plaintiffs' motion for class certification, she stated that, on February 12, 2017, she was walking into a supermarket when she heard people yelling that everyone had to evacuate due to an issue with the Oroville Dam's spillway. The supermarket then announced it was closing because of a mandatory evacuation and advised customers to go home and evacuate. Plaintiff Bechtel, who also resides in Oroville, declared that he saw a mandatory evacuation order on the bottom of his television screen at approximately 3:00 p.m. About 15 minutes later, a Butte County Sheriff's vehicle drove down his street and announced that residents had to leave their homes.

In opposition to Plaintiffs' motion, DWR submitted evidence of multiple evacuation orders. Butte County issued an order on February 12, 2017, at 4:10 p.m. that called for evacuation from "the low levels of Oroville and areas downstream." This appears to be the order that was described in Plaintiffs' moving papers. DWR also submitted evidence that, at around 4:34 p.m., Butte County issued a second order stating, "[o]fficials now anticipate a failure of the Auxiliary Spillway at Oroville Dam within the next 60 minutes. Residents of Oroville should evacuate in a northward direction such as towards Chico. Other City's [*sic*] should follow the orders of their local law enforcement." At 4:59 p.m., Yuba County called for the evacuation of "[a]ll Yuba County on the valley floor." At 6:03 p.m., Sutter County called for the "[i]mmediate

6

evacuation" of "Live Oak, Yuba City, Nicolaus[,] and other communities along [the] Feather River." Yuba City itself only strongly recommended evacuation.

DWR submitted a declaration of Dr. Cova, an expert on human population evacuations due to natural disasters. Dr. Cova explained that using the term "mandatory" in the context of an evacuation recommendation is common and will usually achieve the greatest percentage of population compliance, but the decision of whether to evacuate in response to an environmental threat is left to each household or individual. Additionally, individuals may choose to leave before receiving any government warning. Thus, in some cases, officials give a second recommendation to residents outside the evacuation zone to stay in order to minimize this shadow evacuation phenomenon.

Dr. Cova stated there is no known method to enumerate who evacuated and who did not in a given area and time frame in response to a broadcasted evacuation order. He explained that a door-to-door or phone survey would have a significant potential for error because some evacuees may have been outside the official evacuation zone, some may say they evacuated when they did not, some may have left after the order was lifted, and some may have left for much longer than the official evacuation time. Dr. Cova opined that, with respect to the Oroville Dam spillway, the different messages across jurisdictions also introduces confusion in determining who evacuated in response to what message, which further confuses the question of who qualifies as a class member.

### 2. Trial Court Ruling

The trial court concluded that regardless of whether Bechtel Plaintiffs adopted the proposed class definition set forth in their operative complaint or the definition set forth in their motion for class certification, the motion must be denied because the proposed class was not sufficiently ascertainable. The court explained, "Bechtel Plaintiffs contend that it will be fairly easy for a putative class member to determine if he or she is actually a class member by simply determining whether he or she lives in the mandatory evacuation zone. Bechtel Plaintiffs contend the mandatory evacuation order identifies all

7

zones necessary for purposes of certification. Even cursory review, however, reveals gaps in Plaintiffs' reasoning. Bechtel Plaintiffs do not address the orders issued by Yuba County, Sutter County and Yuba City that suggested, recommended, or even strongly encouraged citizens in broadly defined areas to consider evacuating - but which were not mandatory and . . . were overly broad due to the vague language they contained in terms of establishing geographic designations and boundaries. Bechtel Plaintiffs do not address whether those residents are intended to be part of the proposed class and, if so, how the Court should determine which 'order' caused a particular putative Plaintiff to evacuate. [¶] Nor do Bechtel Plaintiffs address the persons within the supposed Butte County 'mandatory' evacuation zone who, as Dr. Cova notes, simply did not evacuate at all, or those persons who evacuated but did so from somewhere other than their own residence. Moreover, the map or area to which Bechtel Plaintiffs refer as part of the Butte County 'mandatory' order is merely approximate and does not set a clear perimeter by which a putative class member could conclusively determine membership." The court concluded that "[f]rom the records and maps submitted in this case, . . . it would be difficult (and in some cases impossible) for many of the putative class members to determine whether they would be eligible to join in the class action. Even the 'mandatory' order is not sufficiently detailed to provide enough information to determine if a person actually evacuated, whether an evacuation occurred from a residence, whether that residence was within the 'zone' of evacuation and even which order (if any) prompted an evacuation."

   3.    *Analysis*

   To obtain certification, Plaintiffs bore the burden of establishing an ascertainable class. (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 435.) At the class certification stage, a plaintiff need not provide evidence of how notice to the class members can be accomplished. (*Noel*, *supra*, 7 Cal.5th at p. 984.) Rather, the ascertainability requirement focuses on the class definition. (See *id*. at p. 980.) A proposed class definition articulates an ascertainable class when it "defines the class 'in terms of

8

objective characteristics and common transactional facts' that make 'the ultimate identification of class members possible when that identification becomes necessary.' " (*Id*. at p. 961; see also *id*. at pp. 967, 980.)  This standard includes "class definitions that are 'sufficient to allow a member of [the class] to identify himself or herself as having a right to recover based on the [class] description.' " (*Id*. at p. 980.)  It excludes classes that are defined too vaguely or by subjective criteria, such as by a person's state of mind. (*Id*. at pp. 977, 980-981 & fn. 12.)

As the trial court summarized, Plaintiffs' motion for class certification "posit[ed] that 'nothing more than interpreting objective data regarding the geographical areas subject to . . . mandatory evacuation is required' and that apparently all residents within this zone comprise the proposed class."  Likewise, on appeal, in the introduction of their opening brief, Plaintiffs state "[t]he class includes approximately 188,000 individuals, which are easily identifiable through an objective and established geographic zone that was subject to the mandatory evacuation in February 2017."  Later in their briefing, Plaintiffs argue the proposed class "is clearly defined upon simple, objective criteria.  It is based upon a mandatory evacuation order issued to 188,000 residents on February 12, 2017."  In fact, the evidence and briefing submitted to the trial court demonstrated there was no defined mandatory evacuation zone and no defined group to which a mandatory evacuation order was issued.  On appeal, Plaintiffs contend the first order issued by Butte County and the orders issued by Yuba County and Sutter County were mandatory.  Even assuming they were and we defined the class as limited to the areas subject to these orders, they did not describe a specific area but rather such vague areas as: "low levels of Oroville and areas downstream," the portion of Yuba County that is "on the valley floor," and "other communities along [the] Feather River."  Plaintiffs state "[t]here is no concern for an unconfined geographic border here as [DWR]'s own 'geography expert' is able to understand the geographic region subject to the mandatory evacuation."  In the cited deposition testimony, Dr. Cova stated he had "a general idea" that people that evacuated

9

"came out of the areas that were . . . proximal to the Feather River." When asked what areas those were, Dr. Cova stated, "Oroville, Marysville, Yuba City, unincorporated areas, I suppose, outside of any of these incorporated towns." Dr. Cova's "general idea" of where evacuees came from is insufficient to establish what the boundaries of any or all mandatory evacuation orders were.[2] Additionally, Plaintiffs' suggestion that class members could self-identify is unhelpful. Plaintiffs have proposed a class of people who evacuated on February 12, 2017, pursuant to a mandatory evacuation order, but that class definition lacks ascertainability because the evacuation order did not mandate evacuation of a specific geographic area. This lack of ascertainability would also prevent individual class members from self-identifying as meeting the class definition.

Our Supreme Court has explained that "[a] class definition framed in objective terms that make the identification of class members possible promotes due process in at least two ways. Such phrasing puts members of the class on notice that their rights may be adjudicated in the proceeding, so they must decide whether to intervene, opt out, or do nothing and live with the consequences. [Citation.] This kind of class definition also advances due process by supplying a concrete basis for determining who will and will not be bound by (or benefit from) any judgment. Allowing a class to be defined in vague terms, by contrast, could blunt any invocation of res judicata by the defendant in subsequent lawsuits brought by persons attempting to relitigate issues decided in the

---

[2] In arguing the proposed class would be manageable and the foreseeability of harm necessary for a dangerous condition of public property claim could be established on a classwide basis, Plaintiffs cite to inundation maps that are based on "hypothetical dam failure" using modeling software. (See Wat. Code, § 6161 [requiring submission of inundation map].) The "Inundation area" is "the area downstream of the dam . . . that would experience a rise of one foot or greater in water surface elevation as the result of a failure scenario." (Cal. Code Regs., tit. 23, § 335.2, subd. (a)(15).) Thus, the trial court was correct that there was no foundation the inundation maps correlated with the issue presented in the complaint—potential failure of the spillways during excessive rain. Moreover, the evacuation orders did not use or refer to the inundation maps.

10

earlier class proceeding." (*Noel, supra,* 7 Cal.5th at p. 980.) Here, Plaintiffs proposed a class definition that would make it impossible for individuals and DWR to know whose claims were being adjudicated. As such, Plaintiffs failed to meet their burden of establishing an ascertainable class.

On reply, Plaintiffs note that, "if necessary to preserve the case as a class action, the court itself can and should redefine the class where the evidence before it shows such a redefined class would be ascertainable." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916.) A point raised for the first time in a reply brief is waived unless good reason is shown for the failure to present it before. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) Here, the class proposed in Plaintiffs' moving papers was redefined from that which was proposed in their complaint, but Plaintiffs have not suggested to the trial court or to us a further class that would be ascertainable. " 'The burden is on the party seeking certification to establish the existence of . . . an ascertainable class.' " (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.) Plaintiffs have not met their burden. It is not this court's function to speculate as to any matter in order to assist a party. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546.)

Further, lack of an ascertainable class appears to be inherent in Plaintiffs' claims. Plaintiffs emphasize that they only seek "to recover out of pocket expenses incurred by the class members during the two-day mandatory evacuation period and the value of the loss of use of their properties for the two-day mandatory evacuation period."[3]

---

[3] "Damages recoverable in a successful nuisance action for injuries to real property include not only diminution in market value but also damages for annoyance, inconvenience, and discomfort [citation]; actual injuries to the land [citation]; and costs of minimizing future damages." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 464, superseded by statute on other grounds.) To fulfill their fiduciary duty, representative plaintiffs must seek recovery of damages that would be reasonably be expected by members of the class. (*Ibid.*)

11

Additionally, to support their assertion that common issues predominate, Plaintiffs' arguments rely on the common fact of an evacuation order. For instance, they assert that causation is the same for every class member because the mandatory evacuation order applies equally to each of them. Thus, the potential viability of the proposed class action appears to depend heavily on the common fact of an evacuation order, but the orders are themselves vague. This appears fatal to Plaintiffs' attempts at class certification.

In sum, Plaintiffs have not shown the trial court's ascertainability ruling is unsupported by substantial evidence, or rests on improper criteria or erroneous legal assumptions. We thus must uphold that ruling as well within the trial court's discretion.

## III. DISPOSITION

The judgment is affirmed. Respondent Department of Water Resources shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

---

RENNER, J.

We concur:

/S/

---

MAURO, Acting P. J.

/S/

---

DUARTE, J.

12