[No. A102544. First Dist., Div. Four. Sept. 15, 2004.]

EILEEN QUACCHIA, Plaintiff and Appellant, v.
DAIMLERCHRYSLER CORPORATION, Defendant and Respondent.

Counsel

The Furth Firm, Frederick P. Furth, Michael P. Lehmann and Kimberly A. Kralowec for Plaintiff and Appellant:.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Gregory D. Brown, Courtney A. Cook; Bryan Cave and John W. Rogers for Defendant and Respondent.

Opinion

**RIVERA, J.**—Plaintiff Eileen Quacchia appeals after the trial court denied her motion for class certification. We conclude the trial court did not abuse its discretion in finding that common issues do not predominate in this action. Accordingly, we affirm.

## I. BACKGROUND

Certain vehicles manufactured by defendant DaimlerChrysler Corporation (DCC) contain a seat belt buckle known as the "Gen-III" buckle. Plaintiff, the owner of a Dodge Caravan equipped with Gen-III buckles, brought this action, alleging the Gen-III buckles were subject to accidental release at any time, especially in the event of a collision, because the release button sticks out above the outside cover. According to plaintiff, the defective Gen-III buckles had been installed in numerous DCC vehicle models manufactured between 1992 and the present.[1] Plaintiff sought to pursue this action on behalf of a class of all persons and entities in California who currently own or lease model year 1993 through 2002 vehicles manufactured or sold by DCC that contain Gen-III buckles; however, she excluded those that purchased DCC vehicles for resale, those who have suffered physical injury as a result of defective Gen-III buckles, and those who had filed separate, nonclass legal actions based on the alleged defectiveness of Gen-III buckles.

Plaintiff's complaint sets forth three causes of action. On behalf of herself and the California general public, she seeks injunctive relief and restitution under California's unfair competition law (UCL) (Bus. & Prof. Code,

---

[1] These models included, for various model years, the Plymouth Acclaim; the Dodge Spirit; the Dodge B-150 van; the Dodge Cargo and Conversion vans; the Dodge Ram vans, trucks, and wagons; the Chrysler Lebaron; the Dodge Shadow; the Plymouth Sundance; the Dodge Caravan and Grand Caravan; the Plymouth Voyager; the Dodge Grand Voyager; the Chrysler Town & Country van; the Chrysler 300M, Concorde LH, Intrepid, LHS, and New Yorker; the Eagle Vision; the Dodge Viper R/T 10 Coupe, R/T 10 Luxury, and Sport Specialty; and the Jeep Cherokee, Grand Cherokee, Wrangler, Wrangler Sport, and Wagoneer.

§ 17200 et seq.). On behalf of herself and the alleged class, she seeks injunctive relief and restitution under the UCL, and damages, injunctive relief, restitution, and punitive damages under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). Plaintiff moved for class certification of her second and third causes of action.[2] The trial court denied the motion, and this timely appeal ensued.

## II. DISCUSSION

A. *Standard of Review*

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. The denial of certification to an entire class is an appealable order [citations], but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*); see also *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913–914 [103 Cal.Rptr.2d 320, 15 P.3d 1071] (*Washington Mutual*).) In reviewing an order denying class certification, we consider only the reasons given by the trial court for the denial, and ignore any other grounds that might support denial. (*Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 658 [125 Cal.Rptr.2d 46] (*Corbett*).)

 ██ Citing a number of cases, including *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948], plaintiff contends that the trial court *must* grant the motion for class certification if there is substantial evidence that the requirements of certification were met and *must* disregard any conflicting evidence or inferences. Plaintiff then asks us to review the record de novo to determine whether the trial court carried out this task properly. While plaintiff correctly states she need only present substantial evidence of the class requirements (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108 [131 Cal.Rptr.2d 1, 63 P.3d 913] (*Lockheed Martin*)), there is no rule that conflicting evidence or

---

[2] Plaintiff did not seek certification of her first cause of action as it is a representative claim under the UCL on behalf of the general public.

inferences must be disregarded. The cases relied upon by plaintiff for this contention address the standard used for granting a nonsuit or a directed verdict; they do not apply to class certification motions.

█ We reject plaintiff's novel contention that, because "[c]lass certification parallels nonsuit in many respects," the cited cases are controlling. A nonsuit cuts off a plaintiff's right to obtain a determination of her claims by a jury. It can be granted only if the evidence favorable to plaintiff will not sustain a verdict as a matter of law. (*Cossman v. DaimlerChrysler Corp.* (2003) 108 Cal.App.4th 370, 375–376 [133 Cal.Rptr.2d 376] ["[a] motion for nonsuit . . . concedes the truth of the facts proved, but denies as a matter of law that they sustain the plaintiff's case"].) Therefore, evidence that conflicts with the plaintiff's theory of the case must be ignored by the trial court in ruling on a motion for nonsuit. (*Ibid.*) In contrast, the grant or denial of a class certification motion is not a ruling on the merits of plaintiff's claims, but only determines whether the case should proceed as an individual action or a class action. The question is whether plaintiff has presented substantial evidence of the class action requisites; this is a discretionary determination to be made by the trial court. (*Linder, supra,* 23 Cal.4th at pp. 435–436.) Nothing in the law prevents the court from considering the totality of the evidence in making that determination. (Cf. *ibid.*; *Washington Mutual, supra,* 24 Cal.4th at pp. 913–914.)[3] If this were not the rule, plaintiff could pick and choose among the facts to present to the court, providing an incomplete picture of the litigable issues, in order to ensure a certification.

█ Neither *Lockheed Martin, supra,* 29 Cal.4th 1096, nor any other authority plaintiff cites alters two well-established California standards: (1) The trial court has "great discretion" in granting or denying class certification. (2) Unless the trial court applied improper criteria or erroneous legal assumptions, and in the absence of "other error," a class certification ruling supported by substantial evidence—whether a grant or a denial—will not be disturbed on appeal. (See *Linder, supra,* 23 Cal.4th at pp. 435–436; *Washington Mutual, supra,* 24 Cal.4th at p. 914.) " 'Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification.' [Citation.] [¶] . . . ' "[S]o long as [the trial] court applies proper criteria and its action is founded on a rational basis, its ruling must be

---

[3] Plaintiff cites a number of federal cases for the proposition that it is improper for the trial court to weigh conflicting evidence presented by defense experts in determining whether the moving party has satisfied its burden. (See, e.g., *Caridad v. Metro-North Commuter Railroad* (2d Cir. 1999) 191 F.3d 283, 293 [if parties present conflicting expert testimony about whether common questions predominate, the court must disregard the defense expert's testimony].) Assuming the same rule applies here, it does not affect the outcome. To the extent defendant's expert evidence was pertinent to the ruling on the motion—testimony that the buckles operated differently in different vehicle environments—it did not conflict with plaintiff's evidence.

upheld." [Citations.]' [Citations.]" (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1233 [87 Cal.Rptr.2d 346].)

## B. *Requisites for Class Certification*

■ A UCL claim may be certified as a class action where the requirements of Code of Civil Procedure section 382 are met. (*Corbett, supra,* 101 Cal.App.4th at p. 663.) That statute authorizes class actions when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." (Code Civ. Proc., § 382.) Thus, "[t]o obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. [Citations.] The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Linder, supra,* 23 Cal.4th at p. 435.) The party seeking class certification has the burden to establish the existence of an ascertainable class and a well-defined community of interest. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; *Norwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal.App.4th 214, 221 [85 Cal.Rptr.2d 18].)

■ The requirements of the CLRA are similar. The CLRA provides that the court shall allow a class action if all of the following conditions exist: "(1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class." (Civ. Code, § 1781, subd. (b); see also *Linder, supra,* 23 Cal.4th at p. 438.) As particularly relevant here, both Code of Civil Procedure section 382 and the CLRA require a showing that common questions of law or fact predominate in order for class certification to be proper.

## C. *Predominance of Common Issues*

The trial court found common issues did not predominate. Before so finding, the court stated: "The Court will not dwell on the distinctions among the three prongs of the UCL (unfair, fraudulent and unlawful), the nine legal bases that support the unlawful prong of the UCL, and the three subsections of the CLRA. These distinctions ultimately boil down to whether the claim rests on a (common law or federal) defect in the product or the product's

failure to comply with [49 C.F.R. 571.209-S4 (2003)]."[4] Citing *Daly v. General Motors Corp.* (1978) 20 Cal.3d 725, 746 [144 Cal.Rptr. 380, 575 P.2d 1162] (*Daly*), the court held that the alleged seat belt defect, as defined by common law, must be examined in the context of the overall effectiveness of the restraint systems in specific vehicles. Because the Gen-III belts had been installed in "17 different vehicles over 10 model years," and there was evidence that "the location, shielding, and installation of the buckle all affect whether the buckle is subject to accidental release," the court concluded that "[t]he numerous different contexts in which any defect would have to be determined preclude class certification of any claim based on a defect in the Gen-3 buckle." Regarding plaintiff's claim that DCC had violated the UCL by failing to disclose a defect in the buckle as defined in federal law,[5] the trial court relied on *United States v. General Motors Corporation* (D.C. Cir. 1975) 518 F.2d 420 (*Wheels*) to conclude that a component in a vehicle contains a defect only if it is subject to a significant number of failures in "normal operation." This would require the trier of fact to look separately at the buckle's installation and operation in each vehicle. Therefore, according to the trial court, common issues did not predominate in the UCL claim.

The record contains evidence to support the trial court's conclusion that the location, shielding, and installation of the buckle affect whether it is subject to accidental release. Gary R. Chapman, an engineer at DCC, stated in a declaration that buckle placement, orientation and accessibility vary among makes and models of DCC vehicles, and within the same vehicle model. Different types of seats, armrests, consoles, buckle mounts and latch plates (the plate that is inserted into the buckle to secure the passenger) are available within the proposed class, among various years for the same vehicle models, as options for the same vehicle models, or in different seating positions in the same vehicle, and that equipment affects the placement and accessibility of the buckles. Indeed, although plaintiff's experts opined that the Gen-III buckle was unsafe in any configuration, they also agreed that the likelihood of accidental release is determined in part by how accessible the buckle is.

---

[4] The UCL defines unfair competition in part as "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) The CLRA provides that certain unfair methods of competition and unfair or deceptive acts intended to result in the sale or lease of goods are unlawful; those methods include "[r]epresenting that goods or services have sponsorship, approval, [or] characteristics . . . which they do not have . . ." (Civ. Code, § 1770, subd. (a)(5)), "[r]epresenting that goods or services are of a particular standard, quality, or grade, . . . if they are of another" (*id.*, subd. (a)(7)), "[a]dvertising goods or services with intent not to sell them as advertised" (*id.*, subd. (a)(9)), and "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (*id.*, subd. (a)(14)).

[5] A violation of federal law may serve as a predicate for an action under the UCL. (*Roskind v. Morgan Stanley Dean Witter & Co.* (2000) 80 Cal.App.4th 345, 352 [95 Cal.Rptr.2d 258].)

Plaintiff attempts to avoid this evidence by arguing that the trial court failed to consider her CLRA and UCL claims separately. As noted above, the UCL defines unfair competition in part as any "unlawful," "unfair," or "fraudulent" business act or practice. (Bus. & Prof. Code, § 17200.) Plaintiff contends first that the trial court erred in concluding common issues did not predominate in her claim under the UCL's "unlawful" prong. (*Ibid.*) According to plaintiff, DCC acted unlawfully under the UCL by violating title 49 United States Code section 30118(c)(1), which requires a manufacturer of a motor vehicle or replacement equipment to notify the Secretary of Transportation and the owners, purchasers and dealers of the vehicle or equipment if the manufacturer learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety. Plaintiff appears to be arguing that the safety of Gen-III buckles should be evaluated in isolation from the vehicles in which they are installed. This position is undercut, however, by *Wheels*, an enforcement action by the government under the former National Traffic and Motor Vehicle Safety Act of 1966 (15 U.S.C. § 1381 et seq.) alleging the manufacturer violated the act by failing to issue defect notices on pickup truck wheels. (*Wheels, supra*, 518 F.2d at p. 425 & fn. 1.) There, in interpreting title 15 United States Code former section 1402,[6] the court concluded that in order to prove a violation of the act, the government would need to show "a significant number of Wheel failures resulting from operation of Trucks" and "that the defect poses an unreasonable risk of accident, death, or injury." (*Wheels*, at p. 438 & fn. 85.) The court also noted that "the same component may contain a defect in performance relating to motor vehicle safety in one class of vehicle or use but not in another." (*Id.* at p. 439, fn. 88.)

■ Here, as discussed above, there is evidence that the risk of accidental release of Gen-III buckles in the operation of DCC vehicles would vary from model to model, and from year to year. We see no abuse of discretion in the trial court's conclusion that common issues do not predominate in plaintiff's claim that DCC's actions were unlawful under the UCL because they violated title 49 United States Code section 30118(c)(1).

■ Plaintiff's second contention under the UCL's "unlawful" prong, that DCC violated California's common law against selling defective products, fares no better. As plaintiff recognizes, a product has a design defect if "the risk of danger inherent in the challenged design outweighs the benefits of such design." (*Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 430

---

[6] Title 15 United States Code former section 1402(a) provided: "Every manufacturer of motor vehicles or tires shall furnish notification of any defect in any motor vehicle or motor vehicle equipment produced by such manufacturer which he determines, in good faith, relates to motor vehicle safety, to the purchaser (where known to the manufacturer) of such motor vehicle or motor vehicle equipment, within a reasonable time after such manufacturer has discovered such defect." (See *Wheels, supra*, 518 F.2d at p. 425, fn. 4.)

[143 Cal.Rptr. 225, 573 P.2d 443].) It is difficult to see how the risk of danger inherent in the design of the Gen-III buckle, and any concomitant benefit, could be evaluated without reference to the vehicles in which it is placed, since the buckles are used only in connection with the use of the vehicles. Given this predicate, there is ample evidence from which the trial court could reasonably conclude that issues common to the class would not predominate.

Our conclusion is buttressed by our Supreme Court's reasoning in *Daly*, *supra*, 20 Cal.3d 725. There, the court considered whether a defect in a vehicle should be considered in light only of the allegedly defective component or of the product as a whole. The plaintiffs contended that an exposed push button on the exterior door handle, which caused the car door to open during an accident, constituted a product defect. (*Id.* at pp. 730–731.) Plaintiffs challenged an instruction directing the jury to consider all of the vehicle's safety equipment in determining whether or not it was defective. (*Id.* at p. 746.) The Supreme Court stated: "The jury could properly determine whether the Opel's overall design, including safety features provided in the vehicle, made it 'crashworthy,' thus rendering the vehicle nondefective. Product designs do not evolve in a vacuum, but must reflect the realities of the market place, kitchen, highway, and shop. Similarly, a product's components are not developed in isolation, but as part of an integrated and interrelated whole. . . . [¶] The danger of piecemeal consideration of isolated components has been expressly recognized. [Citations.] Specifically, it has been observed that a design rendered safe in one situation may become more dangerous in others. [Citation.] However phrased, these decisions emphasize the need to consider the product as an integrated whole." (*Id.* at pp. 746–747.) Plaintiff downplays the importance of *Daly*, pointing out that it was a products defect action, not a case under the CLRA or the UCL. However, in her briefing below, plaintiff acknowledged that her claims based on the unfair, unlawful, and fraudulent prongs of the UCL would all require proof of "the same basic conduct by Chrysler," which plaintiff characterized as "the manufacture and sale of vehicles equipped with seat belt buckles that Chrysler knew and concealed were defective."[7] Thus, even with respect to plaintiff's UCL claim, *Daly* provides support for the trial court's conclusion that common issues will not predominate.

■ Plaintiff also contends the trial court erroneously failed to consider her claim that DCC's conduct violated the UCL's prohibition against "unfair" and "fraudulent" business acts and practices separately from her claim that DCC's actions were "unlawful." (Bus. & Prof. Code, § 17200.) According to plaintiff, DCC acted unfairly and fraudulently by concealing from consumers the fact that it had thrown out a safety standard and by using a buckle that

---

[7] As discussed below, plaintiff also acknowledged to the trial court that at least one theory underlying her CLRA claim was that the Gen-III buckle was defective.

was not tested to the same safety standard as its other buckles.[8] Plaintiff is correct that conduct can be "unfair" even if no other law prohibits the challenged conduct. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 182–183 [83 Cal.Rptr.2d 548, 973 P.2d 527].) In the context of consumer cases, "unfairness is determined by weighing the utility of the practice against the gravity of the harm to the consumer." (*Kunert v. Mission Financial Services Corp.* (2003) 110 Cal.App.4th 242, 265 [1 Cal.Rptr.3d 589].) She is also correct that "to state a claim under the [UCL] one need not plead and prove the elements of a tort. Instead, one need only show that 'members of the public are likely to be deceived.' " (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545].) However, we cannot conclude the trial court erred in ruling that issues common to the class as a whole would not predominate in a trial of these claims. We are prepared to assume that representations or concealments of information about the Gen-III buckle can be evaluated without reference to its functioning in specific vehicles, as plaintiff's experts opine. But this theory would not preclude DCC from *proffering evidence* to persuade the fact finder that the nondisclosures were neither unfair nor fraudulent because, regardless of the allegedly inadequate testing, the utility of the Gen-III buckle outweighs any risks, and the buckle's performance in any particular vehicle meets a reasonable consumer's expectation. As stated in *Linder*, class actions should be allowed " ' "only where substantial benefits accrue both to litigants and the courts." ' " (*Linder, supra,* 23 Cal.4th at p. 435, quoting *Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755] and *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701].) The trial court could reasonably conclude those benefits would not accrue here.

■ Plaintiff also contends the trial court should have certified the proposed class for her cause of action under the CLRA. As noted above, the CLRA makes unlawful certain unfair or deceptive practices, including making false representations about the characteristics or quality of goods. (Civ. Code, § 1770, subd. (a)(5), (7).) According to plaintiff, DCC violated the CLRA by concealing material facts about the Gen-III's quality and characteristics by failing to disclose that it had thrown out the 30- or 40-millimeter ball test, that it did not test the buckle to the same safety benchmark as its other buckles, and that the buckle failed DCC's own engineering standards

---

[8] The record contains correspondence dated 1992 indicating that in developing the Gen-III buckle, DCC elected not to require a safety test known as the "30mm ball test," apparently because of difficulties balancing that test with producing a buckle that released in the manner DCC wished. The ball test involves attempting to release a buckle using a 30- or 40-millimeter ball, a size designed to test the susceptibility of the buckle to inadvertent release by approximating the effect of a human elbow or other object on a seat belt buckle.

and the industry standard test for seat belt safety. Plaintiff is correct that the CLRA should be "liberally construed and applied to promote its underlying purposes." (Civ. Code, § 1760.) However, the question before us is not whether plaintiff will be able to persuade a fact finder that DCC engaged in unfair or deceptive acts in violation of the CLRA (Civ. Code, § 1770, subd. (a)), but whether the trial court erred in concluding that common issues do not predominate. Plaintiff informed the trial court that one theory underlying her CLRA claim was that the Gen-III buckle was defective, and that DCC misrepresented the safety of the Gen-III buckle and/or failed to disclose a defect in the buckle. In light of the holding in *Daly, supra,* 20 Cal.3d at pages 746–747, as with the UCL claim, one can expect DCC would attempt to persuade the fact finder that, as installed in some or all of its vehicles, the Gen-III buckle was safe and therefore DCC had not misrepresented the safety of its goods, nor concealed any defect with respect to those vehicles.[9]

 Finally, plaintiff contends the trial court improperly weighed the conflicting evidence and made a finding on the merits of the case in determining that common issues would not predominate. She argues that the court's predicate ruling—that the issue of whether there is a defect in the buckle would be analyzed in the context of the overall restraint system in each vehicle—is a "factual finding that hinges on testimony [not] a legal conclusion mandated by *Daly.*" Plaintiff is correct that a ruling on a class certification motion normally should not include a consideration of the merits of the case. (*Linder, supra,* 23 Cal.4th at p. 443.) However, where "issues affecting the merits of a case [are] enmeshed with class action requirements, such as whether substantially similar questions are common to the class and predominate over individual questions," a court is authorized to scrutinize a proposed class cause of action to determine whether it is suitable for resolution on a classwide basis. (*Ibid.*) Such is the case here. As a practical matter, a trial court operates from a set of legal assumptions in order to decide a class certification issue. Unless those legal assumptions are shown to be wrong, we are not at liberty to decide anew whether the class should be certified. (*Id.* at pp. 435–436.) Plaintiff does not contend the assumption is error, only that it was prematurely made. We conclude it was well within the trial court's discretion to utilize this working assumption for purposes of the class certification motion.

---

[9] Plaintiff also told the trial court her CLRA claim was based upon the theories that DCC represented the buckles had characteristics they did not have or represented the buckles were of a particular standard, quality or grade, which they were not. (See Civ. Code, § 1770, subd. (a)(5), (7).) It is reasonable to expect that, with respect to these allegations, DCC will seek to introduce evidence that as to vehicles in which there is no undue risk of accidental release of the Gen-III buckle, there was no material misrepresentation or concealment. Again, the trial court could reasonably conclude common issues would not predominate at trial.

In a related argument, plaintiff relies upon the recently published case of *Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070 [16 Cal.Rptr.3d 25]. It is cited primarily for the proposition that a plaintiff need only present logical and reasoned expert testimony to support her theory of commonality, and where, as here, such evidence is presented it is an abuse of discretion to deny class certification. That is not the holding of *Lebrilla*. In *Lebrilla*, the court first made a critical ruling on a predicate legal issue that effectively eviscerated the defendants' first line of defense: that each plaintiff's claim would have to be examined on its peculiar facts. (*Id.* at pp. 1076, 1082–1083.) That ruling having been made, defendant was left only with its critique of plaintiffs' expert's opinion. Under these circumstances, the court concluded "it remains to be seen whether the trier of fact will be persuaded by the plaintiffs' common proof and experts' testimony . . . . However, . . . at this time, it is not our role, nor the trial court's job, to involve ourselves with the merits of the underlying action or which parties' experts are most qualified." (*Id.* at p. 1084.)

Contrary to plaintiff's characterizations, the trial court in this case did not address the merits of the claim—it did not weigh the experts' conflicting opinions or make any finding that the Gen-III buckle was either defective or not defective. Rather, the court merely determined the nature of the evidence that would be admissible under applicable legal principles, and, given that evidence, ruled common issues would not predominate if the proposed class were certified.[10] We find no error in this determination. Indeed, to reach any other conclusion, we would have to hold that as a matter of law, DCC is not entitled to introduce evidence at trial that the Gen-III buckle is safe as installed in some or all of its vehicles. We know of no authority that would support such a conclusion at this point in the proceedings, on this record.[11]

In light of this conclusion, we need not consider whether the trial court erred in stating that even if common issues predominated, class certification might not be the superior method of handling this controversy.

---

[10] Plaintiff has not sought certification of a more limited class, such as a class of owners of a particular vehicle model, and we have no occasion to consider whether such a class would have been proper.

[11] Plaintiff complains briefly about certain evidentiary rulings the trial court made below, including its ruling that evidence offered below with her reply papers was admissible only for purposes of impeachment. However, we need not consider these contentions, because they are not supported by reasoned argument and citations to authority. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].) In any case, our decision here would be the same even if we considered the portions of the record plaintiff cites. Nor does our decision rely on the National Highway Traffic Safety Administration engineering report plaintiff contends should not have been admitted.

## III. DISPOSITION

The order denying certification is affirmed.

Kay, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied October 4, 2004.