Filed 8/19/14  Boggs v. Franchise Tax Bd. CA2/5
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RICK BOGGS, | B245446 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC457180) |
| v. | |
| FRANCHISE TAX BOARD, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Ralph W. Dau, Judge.  Affirmed.

Arias Ozzello & Gignac, Mike Arias, Mikael H. Stahle; Eugene Feldman for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Kristin G. Hogue, Senior Assistant Attorney General, Donna M. Dean, Deputy Attorney General for Defendant and Respondent.

## INTRODUCTION

Plaintiff and appellant Rick Boggs (plaintiff) appeals from the trial court's order denying his motion for class certification. According to plaintiff, the order must be reversed because, in his motion, he satisfied all of the requirements for class certification and, in denying his motion, the trial court used improper criteria or incorrect legal analyses.

We hold that because substantial evidence supports the trial court's conclusion that plaintiff had failed, inter alia, to satisfy the numerosity element of the class certification requirements and because the trial court used proper criteria and a correct legal analysis in reaching that conclusion, there is no basis for reversal. We therefore affirm the order denying the motion for class certification.

## FACTUAL BACKGROUND

Plaintiff provided the following facts in his declaration in support of his motion for class certification. Plaintiff has been totally blind since age five. He is unable to read printed words unless they are transcribed into Braille or formatted to be readable through screen reader software.

In or about 2007, plaintiff received a telephone call from an employee of defendant and respondent Franchise Tax Board (the Board) named Rocio. Rocio informed plaintiff that he owed the State of California approximately $4,000 in back income and payroll taxes, and an additional $3,000 to $4,000 in penalties and interest. Rocio asked plaintiff to make arrangements to pay the amounts due. Because plaintiff had retained tax professionals to prepare and file his tax returns every year since the mid-1990's, he informed Rocio that he did not owe back taxes, or penalties and interest, and that prior to her call, he had no knowledge of the claimed debt. Plaintiff also informed Rocio that he was visually impaired and, therefore, any communications from the Board needed to be in an alternative format that he could read. Plaintiff explained that such

2

alternative formats would include Braille, as well as e-mail. Rocio agreed to, and did, send plaintiff an e-mail itemizing taxes, interest, and penalties that the Board claimed he owed. Rocio also assured plaintiff that she would make a note in the Board's computer system to ensure that future communications from the Board would be made by e-mail.

A few weeks later, Rocio called plaintiff and again asked him to make arrangements to pay the full amount the Board claimed he owed. Plaintiff responded that he would pay a portion of the back taxes, if a payment plan could be arranged. But plaintiff requested that interest and penalties be waived because he was visually impaired and had not received any notice of the tax debt in a format he could read. Rocio replied that she had no authority to grant such a waiver, but at plaintiff's request, she agreed to refer the matter to a supervisor.

Several months later, Rocio called plaintiff to again request full payment of the claimed tax debt, advising that she had been unable to obtain a waiver of interest and penalties due to the Board's policy against granting such waivers. Plaintiff told Rocio that the Board's position was unfair and that he intended to retain counsel.

From and after plaintiff's last telephone call with Rocio, he did not receive any communications from the Board that were accessible to him as a visually impaired taxpayer. Plaintiff had, however, received from the Board approximately 15 pieces of print mail since that last conversation, but none in Braille, e-mail, or any other accessible format.

In or about 2009, plaintiff called the Board once on its 800 number to repeat his request for communications in a format accessible to him. During that call, plaintiff advised that he had previously requested that all communications from the Board be in an accessible format, that he had not received such communications, and that he continued instead to receive print communications that he could not read.

In or about 2009, plaintiff also attempted to access the Board's public website to determine if he could request communications in alternative formats and whether the Board had a policy to accommodate taxpayers with disabilities. Plaintiff was unable to answer either inquiry through the Board's website.

3

In his reply papers in the trial court, plaintiff submitted the following testimony from his deposition. Plaintiff learned about the tax issue with the Board in 2007 because his "paycheck was short." He expressed "outrage" and "frustration" because an audit had been conducted without notifying him and his wages had been garnished without any advance notification.

When Rocio called plaintiff in 2007, she informed him that she had no authority to waive "penalties and fees," but that she understood his position. Plaintiff complained that he had no opportunity to avoid the penalties and fees because he was not informed that he owed taxes in any accessible format. "All [plaintiff] was asking was for an equal opportunity to address [the tax issue] before penalties and fees would be incurred, and could [the parties] just start from [the point] . . . when [plaintiff] became aware of the problem." Plaintiff asked Rocio to seek authority from her supervisors to waive the penalties and fees, and she agreed to do so.

Plaintiff's position was that the failure of the Board to provide him documents in an accessible format caused him to incur an additional tax liability. Plaintiff explained, "If [plaintiff] received an accessible communication from the [Board], [he] would have known about any problems regarding tax returns or tax liability, and [he] would have had an opportunity to address those problems before [he] incurred any penalties or interest or other fees. Since [plaintiff] had no knowledge of any problems, [he] only became aware that there were problems after significant penalties and fees had been assessed. And [the Board's] policy [did not] allow for any reasonable accommodation to mitigate that unintended default or negligence, delinquency [he] would call it, rather. [The lack of] any policy, procedure or practices that enable [plaintiff] or any blind person to interact with the [Board] in a comparable manner to the way other sighted people would interact, . . . [made] it impossible for [plaintiff] to avoid penalties, interest and fees that the [Board would] assess."

Plaintiff further testified as follows: "With respect to [his] payroll tax [liability], for example, [plaintiff] hired people with disabilities, blind people and people with other physical disabilities. [Plaintiff had] heard from other companies and professionals that

4

there [were] . . . tax advantages for hiring people with disabilities. [Plaintiff] never was able to take advantage of any of those opportunities, because [he] could never find any accessible information from [the Board] on how to do that. [He] did inquire. [He] didn't hire the people specifically for that reason, but if—. . . [the Board's] policies and practices enable [him] to have equal access to the information that sighted people have, it's possible [his] taxes—[his] tax liability would be less, because [he] would have the information that [he] needed to know how to report or claim . . . [or] take certain deductions or whatever regarding that particular—that particular benefit. [¶] And [plaintiff] use[d] that as one example to say how many other ways [he] could . . . have saved money on tax liability that [he did not] know about because of the lack of policies, procedures and practices by [the Board]. So [plaintiff] lack[ed] information, in other words."

In addition to the foregoing testimony, plaintiff submitted, inter alia, evidence that, during the class period, approximately 30,000 state taxpayers annually filed returns claiming a "blind exemption credit." Plaintiff also provided the declaration testimony of a computer expert concerning the accessibility of the Board's website. In that expert's report he concluded that "[o]verall, the accessibility of the [Board's] website [was] quite good. Pages [had] good semantic structure, well-labeled images, decent color contrast, excellent page titles, excellent internal and in-page navigation, and [did not] rely on sensory characteristics for site navigation. The site search and Accessibility pages [were] also highly accessible and easy to find. In addition, most forms [had] good accessibility, and for the most part keyboard accessibility [was] good." According to the expert, however, there were "primary barriers [that were] of critical importance . . . [in] two categories: webpage content and PDF files."

In support of its opposition to the motion for class certification, the Board submitted, inter alia, the following facts upon which the trial court expressly relied in making its numerosity determination. The Board's "Accessibility Policy" was posted on its website. That policy advised taxpayers to contact the Board's Americans with Disabilities Act (ADA) coordinator in the Equal Employment Opportunities (EEO) office

to obtain documents in alternative format or to file a grievance. That information had been on the Board's website since June 2005. The alternative formats that were available from the Board included Braille, large print, and audio CDs. From 2008 to January 2012, the Board mailed its Form 540 in large print and audio formats to taxpayers in response to requests made to a Board call center. From 2009 to January 2012, the Board fulfilled 5,043 orders for Form 540 in "ada" and audio formats in response to requests made through the Board's automated taxpayer assistance interactive voice response system. And, there were no complaints during the class period by visually impaired taxpayers regarding an inability to obtain documents in an alternate format or an inability to access the Board's website.

According to the Board's records, plaintiff contacted the Board on September 24, 2007, after his wages had been garnished based on a balance due for the 2000 tax year. Plaintiff requested that the amount being withheld from his paycheck be reduced due to hardship, and the Board granted his request. Plaintiff told the Board employee that he was upset, completely blind, and had requested that notices be sent so he could read them. But the record of this phone call does not contain any request by plaintiff for specific documents in alternative formats. The Board's record of that telephone call was the only record in plaintiff's taxpayer file indicating that he was blind or discussing the issue of documents in alternative formats.

In a July 2010 recorded telephonic interview conducted by the Board's EEO officer, plaintiff stated that, at some time in the past, he initially requested notifications from the Board in an alternative format, but the Board did not provide such notices. Plaintiff made two additional requests for communications in alternative formats, by e-mail and telephone, between October 2009 and February 2010, but the Board employee with whom he spoke by telephone informed him that the Board had no program or means to provide alternative format notification, although the Board was developing some such a program. Plaintiff informed the EEO officer that he had more specific information about his initial contact with the Board in notes and e-mails on his laptop computer and

6

he agreed to provide that information, but he later discovered that he had disposed of the laptop computer containing the information.

## PROCEDURAL BACKGROUND

In the operative first amended complaint, plaintiff asserted causes of action for violation of the California Public Accommodations Law—Civil Code section 54, et seq.—violation of Government Code section 11135, and injunctive relief. According to plaintiff, he and the members of the classes he proposed to represent had been unlawfully discriminated against as a result of the Board's failure to provide communications to visually impaired taxpayers in accessible formats such as Braille, large print, and e-mail. Plaintiff defined the two subclasses that he proposed to represent as follows: "(a) **PLAINTIFFS NOTICE CLASS:** All visually impaired individuals considered to have a physical disability, as that term is defined in *Cal. Gov. Code* § 12926, who, during the period March 21, 2008 to the present[1] [the class period], have not been provided with notices regarding tax returns and like communications in an alternative format, such as Braille, large print and/or electronic mail by [the Board]. [¶] (b) **PLAINTIFF WEBSITE CLASS:** All visually impaired individuals considered to have a physical disability, as that term is defined in *Cal. Gov. Code* § 12926, who, during [the class period], have not been provided access to [the Board's] public website in a format accessible by a screen-reader or similar computer program."

Following discovery, plaintiff filed his motion for class certification. At the hearing on the motion, the trial court heard oral argument, took the matter under submission, and thereafter issued a minute order denying the motion on the grounds that plaintiff, as to both of the alleged subclasses, had failed to satisfy the numerosity,

---

[1] Because the original complaint was filed on March 14, 2011, the defined class period spanned approximately three years.

typicality, adequacy, commonality, and superiority elements necessary for class certification. Plaintiff filed a timely notice of appeal from that order.

## DISCUSSION

### A. Standard of Review

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' (Code Civ. Proc., § 382.) A trial court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326-327 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On Drug Stores*).) We do not apply this deferential standard of review if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis: '[A] trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made . . . ."' (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*); accord, *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 575-576 [67 Cal.Rptr.3d 468, 169 P.3d 889]; *Sav-On Drug Stores, supra*, 34 Cal.4th at pp. 326-327; see *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828-829 [97 Cal.Rptr.2d 226] ['[i]f the trial court failed to follow the correct legal analysis when deciding whether to certify a class action, "an appellate court is required to reverse . . . 'even though there may be substantial evidence to support the court's order'"'].) The reviewing court 'must examine the trial court's reasons for denying class certification.' (*Linder, supra*, 23 Cal.4th at p. 436.) When reviewing an order denying class certification, appellate courts 'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial.' (*Bufil v. Dollar Financial Group, Inc.* (2008) 162

8

Cal.App.4th 1193, 1205 [76 Cal.Rptr.3d 804].)" (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297-1298.)

### B. Legal and Equitable Principles

"Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. (Code Civ. Proc., § 382; *Fireside Bank* [*v. Superior Court* (2007) 40 Cal.4th 1069], 1078, 1089 (*Fireside Bank*); *Linder*[, *supra,*] 23 Cal.4th [at p.] 435 [97 Cal.Rptr.2d 179, 2 P.3d 27]; *City of San Jose* [*v. Superior Court* (1974) 12 Cal.3d 442], 459.) 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."' (*Fireside Bank*, at p. 1089, quoting *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021.)

"The Supreme Court has emphasized that the class action procedure is rooted in equitable principles. '"The class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure. It rests on considerations of necessity and convenience, adopted to prevent a failure of justice. [Citation.]"' (*Fireside Bank*[, *supra,*] 40 Cal.4th [at p.] 1078 [56 Cal.Rptr.3d 861, 155 P.3d 268].) [¶] . . . [¶] 'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." [Citation.] A trial court ruling on a certification motion determines "whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the

litigants." [Citations.]' (*Sav-On Drug Stores, supra*, 34 Cal.4th at p. 326.)" (*Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1126.)

### C.      Analysis

#### 1.      *Waiver or Abandonment*

Relying on *Arechiga v. Dolores Press, Inc.* (2011) 192 Cal.App.4th 567 (*Arechiga*), the Board contends that plaintiff has waived or abandoned on appeal any challenge based on the sufficiency of the evidence. According to the Board, plaintiff failed in his opening brief to cite or discuss any of the evidence submitted by the Board and relied upon by the trial court in making its ruling. In *Arechiga*, the appellant contended that the evidence submitted at trial was insufficient to prove he had entered into an explicit mutual wage agreement. (*Id.* at p. 571.) The court in *Arechiga* held that the appellant had abandoned that contention. "[The appellant] contends insufficient evidence existed to prove he had entered into an explicit mutual wage agreement with Employer. In pressing his contention, [the appellant] ignores a fundamental rule of appellate practice obligating him to completely and fairly summarize the evidence supporting the court's findings and judgment. (*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 96-97 [131 Cal.Rptr.2d 746]; see also *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 748-749 [98 Cal.Rptr.3d 268].) . . . [The appellant's] failure to discuss evidence supporting the court's findings and judgment excuses us from any need to address his contention of insufficient evidence, and we therefore deem the contention abandoned. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Ajaxo Inc. v. E\*Trade Group, Inc*. (2005) 135 Cal.App.4th 21, 50 [37 Cal.Rptr.3d 221]; *Brockey*, at p. 97.)" (*Id.* at p. 571-572.)

Although plaintiff's opening brief does not cite or discuss the Board's evidence, this case differs from *Arechiga, supra,* 192 Cal.App.4th 567 because here plaintiff does not contend that the evidence in support of the trial court's findings was insufficient. To the contrary, plaintiff contends that the evidence in support of each of the class

10

certification elements was sufficient, such that the trial court erred by finding otherwise and by using improper criteria or incorrect legal analyses. In any event, we need not determine the issue because, as explained below, even if we assume plaintiff has not abandoned on appeal any sufficiency claims, the trial court nevertheless correctly concluded that plaintiff had failed, inter alia, to establish the required numerosity element.

### 2. *Numerosity*

In ruling on plaintiff's motion for class certification, the trial court found, inter alia, that plaintiff had failed to satisfy the numerosity element. According to the trial court, "Plaintiff contends the classes are sufficiently numerous because the number of visually impaired tax filers in California is approximately 30,000. (Arias Decl. Exhs. A & B, FTB Response to Special Interrog. (Set One) No. 1.) [The Board] contends the number of filers claiming the 'blind exemption credit' is irrelevant to the numerosity issue (Opp. Mem. pp 1-2) because there is no evidence that any of those tax filers has been denied access to documents in alternative format, denied access to the [Board] website or incurred any taxes, penalties or interest due to the alleged discrimination of the [Board]. [¶] The court agrees with [the Board's] argument. That approximately 30,000 filers claim the 'blind exemption credit' in their tax returns is not evidence that any of these filers sought, but were unable to obtain, any of the services indicated. Plaintiff also argues that the number of alternative format documents provided by [the Board] to tax filers upon request demonstrates numerosity. The number of [the Board's] responses to such requests does not show that any of the requestors were unable to obtain exactly what they asked for. [¶] . . . [¶] Insofar as the Website Class, plaintiff provides the expert declaration and findings of Jon Mires of the Center for Accessible Technology. Mr. Mires is a Web Accessibility Specialist, who states through the report attached to his declaration '[o]verall, the accessibility of the [Board] site is quite good,' but that certain parts of the site are not fully accessible. (Mires Decl., Exh. B, pp. 1-2, Summary of Findings.) Nevertheless, *plaintiff provides no evidence that any visually impaired*

11

*taxpayer* (a) *visited the* [*Board's*] *website during the class period and* (b) *was not provided full accessibility.* [Plaintiff] does not say (see Decl.) he had been unable to obtain full accessibility to [the Board's] website. (Fn. omitted.) [¶] The upshot of the record evidence is that plaintiff has failed to demonstrate numerosity of either the Notice Class or the Website Class."

Plaintiff contends that his factual submissions in support of his motion for class certification satisfied the numerosity element. In support of this contention, he points to the evidence that showed that approximately 30,000 visually impaired persons applied annually for a blind exemption credit during the class period and argues that the "only possible inference to be drawn from this evidence is that the Class easily exceeds even the general threshold of 30 [to] 40 [class members] . . . and greatly surpasses any possible 'minimum' number of class members required for certification."

"A party seeking class certification bears the burden of satisfying the requirements of Code of Civil Procedure section 382, including numerosity, and the trial court is entitled to consider 'the totality of the evidence in making [the] determination' of whether a 'plaintiff has presented substantial evidence of the class action requisites . . . .' (*Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1448 [19 Cal.Rptr.3d 508].)" (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 154.)

Contrary to plaintiff's assertion, his evidence showing that, during the class period, approximately 30,000 taxpayers annually filed for a blind exemption credit does not, by itself, support an inference that the members of the proposed subclasses were sufficiently numerous. The definitions of each subclass require more than a showing that each class member was visually impaired. As the definitions, plaintiff's allegations, and plaintiff's motion make clear, there must also be evidence that numerous visually impaired taxpayers were subjected to a pattern or practice of discrimination by the Board that denied them access to communications in alternative formats or access to necessary information through the Board's website. Plaintiff's evidentiary showing on this latter element of the class definition, however, was insufficient. Although plaintiff claimed that his denial to access of alternative format documents was the result of a pattern or

12

practice, he failed to show that any other visually impaired taxpayer had been the victim of that pattern or practice, much less that numerous visually impaired taxpayers had been victims of it.

Moreover, the Board's opposition contained substantial evidence that showed the Board had an accessibility policy and procedure in place since 2005 for providing visually impaired taxpayers with documents in alternative formats upon request— evidence that rebutted the allegation of a pattern and practice to the contrary. In addition, the Board submitted evidence that during the class period, it responded to over 5000 requests for Form 540 documents in alternative formats—again, evidence that rebuts any suggestion that numerous class members had been denied access to such documents.

Similarly, as to both the notice subclass and the website subclass, the Board provided evidence that there were no complaints during the class period regarding the inability to obtain documents in alternative formats or to access the website. Paintiff's own expert opined that, overall, access to the website was "quite good." Therefore, because plaintiff failed to show that numerous class members had been subjected to the alleged pattern or practice, and the Board submitted substantial evidence to the contrary, the trial court correctly denied his class certification motion based on a lack of numerosity.

Plaintiff contends that, in making its numerosity determination, the trial court used the wrong "standard," presumably meaning that the trial court used improper criteria or legal analyses. According to plaintiff, by requiring him to demonstrate that all class members had suffered injury, the trial court ran afoul of certain federal decisions holding that "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class," even if not all class members have been injured by the challenged practice. (*Walters v. Reno* (9th Cir. 1998) 145 F.3d 1032, 1047 (*Walters*).)

Plaintiff misconstrues the federal case law upon which he relies, as well as the trial court's ruling on numerosity. For example, the quote from *Walters, supra,* 145 F.3d 1032 upon which he bases his argument was taken from the court's discussion of the *commonality requirement*, not numerosity, and it specifically related to certification

13

under Federal Rules of Civil Procedure, rule 23(b)(2),[2] which rule governs certification in cases seeking injunctive or declaratory relief to remedy classwide practices. Moreover, the court in *Walters* specifically noted that "common issues must predominate for class certification under Rule 23(b)(3) . . . ." (*Walters, supra,* 145 F.3d at p. 1047.)

In any event, the trial court did not, as plaintiff contends, rule that plaintiff was required to show injury to each class member in order to establish numerosity. Instead, the trial court found, as a factual matter, that plaintiff had failed to show that any other class member had complained about the discriminatory practice that plaintiff alleged or had suffered injury from that practice. Requiring plaintiff to show that at least 30 to 40 taxpayers[3] during the class period had been victims of the alleged practice or had been injured by it is not the equivalent of requiring plaintiff to show injury to each and every class member at the certification stage. Accordingly, because the trial court used correct criteria and a proper legal analysis in making its numerosity determination, we must affirm the denial of the class certification motion.[4]

---

[2] Rule 23(b)(2) provides , in pertinent part, "Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: [¶] (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; . . ."

[3] Plaintiff concedes that ordinarily numerosity requires evidence that the proposed class is comprised of at least 30 to 40 putative members.

[4] Because we resolve this appeal by affirming the trial court's finding of a lack of numerosity, we do not address plaintiff's challenges to the trial court's other findings concerning certain of the other class action requisites.

## DISPOSITION

The order denying the motion for class certification is affirmed.  The Board is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, J.


We concur:


TURNER, P. J.


MINK, J.[*]

---

[*]    Retired Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.